☑ Original     ☐



**CLERK'S OFFICE**
A TRUE COPY
May 27, 2021
s/ Jeremy Heacox
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
## for the
### Eastern District of Wisconsin

| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched* | ) | Case No. **21-M-419 (SCD)** |
| *or identify the person by name and address)* | ) |
| Information related to Facebook Account | ) | Matter No.: 2021R00003 |
| "Ske Davis" UID: 100057034985097 | ) |
| | ) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:    Any authorized law enforcement officer

     An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____
*(identify the person or describe the property to be searched and give its location)*:

    See Attachment A. This Court has jurisdiction pursuant to 18 U.S.C. §§2703 and 2711 and Fderal Rule of Criminal Procedure 41;

     I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

    See Attachment B.

     **YOU ARE COMMANDED** to execute this warrant on or before ___6-10-21___ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.  ☑ at any time in the day or night because good cause has been established.

     Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

     The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to ___Hon. Stephen C. Dries___ .
*(United States Magistrate Judge)*

     ☑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial) and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☑ for __30__ days *(not to exceed 30)*  ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:    ___5-27-21 4:45 pm___     *Stephen C. Dries*
                                                  *Judge's signature*

City and state:    *Milwaukee, Wis*     Stephen C. Dries, U.S. Magistrate
                                                  *Printed name and title*

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

## Certification

       I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

**ATTACHMENT A**

*Property to Be Searched*

To the extent that the information described in Attachment B is within the possession, custody, or control of Facebook, Facebook is required to disclose to the government the information for the following accounts and dates:

| FACEBOOK NAME | FACEBOOK IDENTIFICATION (UID) | DATES |
|---|---|---|
| Ske Davis | 100057034985097 | December 01, 2019 to the Present |

**ATTACHMENT B**

**Particular Things to be Seized**

I.      **Information to be disclosed by Facebook**

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook, including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for each user ID listed in Attachment A:

a.      All contact and personal identifying information, including**:** full name, user identification number, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

b.      All activity logs for the account and all other documents showing the user's posts and other Facebook activities;

c.      All photos uploaded by that user ID and all photos uploaded by any user that have that user tagged in them;

d.      All profile information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

18

e.      All other records of communications and messages made or received by the user, including all private messages, chat history, video calling history, and pending "Friend" requests;

f.      All "check ins" and other location information;

g.      All IP logs, including all records of the IP addresses that logged into the account;

h.      All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

i.      All information about the Facebook pages that the account is or was a "fan" of;

j.      All past and present lists of friends created by the account;

k.      All records of Facebook searches performed by the account;

l.      All information about the user's access and use of Facebook Marketplace;

m.      The types of service utilized by the user;

n.      The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

o.      All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

p.      All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

## II.    Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence, and instrumentalities of violations of 18 U.S.C. §§ 1951(a) (Hobbs Act robbery) and 18 U.S.C. 924(c)

19

(use of firearm during a crime of violence), since December 01, 2019, for the user ID's identified on Attachment A, information pertaining to the following matters:

(a) The relevant offense conduct, any preparatory steps taken in furtherance of the criminal scheme, and communications between Shalonda DAVIS and others related to the relevant offense conduct of robbery or Shalonda DAVIS's possession of a firearm.

(b) Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

(c) Evidence indicating the Facebook account owner's state of mind as it relates to the crimes under investigation;

(d) The identity of the person(s) who created or used the user ID; and

(e) The identity of the person(s) who communicated with the user ID about matters relating to relevant offense conduct of robbery.

20

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin



CLERK'S OFFICE
A TRUE COPY
May 27, 2021
s/ Jeremy Heacox
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )

Information related to Facebook Account "Ske )
Davis" UID: 100057034985097 )

Case No. **21-M-419 (SCD)**

Matter No.: 2021R00003

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A. This Court has jurisdiction pursuant to 18 U.S.C. §§2703 and 2711 and Fderal Rule of Criminal Procedure 41;

located in the District of , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. Sec 1951(a) and 924(c) | Armed Robberies; |

The application is based on these facts:

See Affidavit attached.

☑ Continued on the attached sheet.

☑ Delayed notice of  30  days *(give exact ending date if more than 30 days:*  *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

FBI SA David Bianchi
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
Telephone *(specify reliable electronic means)*.

Date:  5-27-21

*Judge's signature*

City and state: Milwaukee, Wis

Hon. Stephen C. Dries, U.S. Magistrate
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, David Bianchi, being first duly sworn, hereby depose and state as follows:

## I. INTRODUCTION, BACKGROUND, TRAINING, AND EXPERIENCE

1.      I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been since January 2020. Since September 2020, I have been assigned to the FBI's Milwaukee Area Violent Crimes Task Force. This Task Force is a multi-jurisdictional law enforcement entity charged with investigating violations of federal law, including bank robberies, commercial robberies and other violent crime matters, defined under Title 18 of the United States Code. I have been trained in a variety of investigative and legal matters, including the topics of Fourth Amendment searches, the drafting of search warrant affidavits, and probable cause. I have assisted in criminal investigations, participating in surveillance, interviews, and debriefs of arrested subjects. As a result of this training and investigative experience, I have learned how and why violent actors typically conduct various aspects of their criminal activities.

2.      This affidavit is based upon my personal knowledge, my training and experience, and on information reported to me by other federal, state, and local law enforcement officers during the course of their official duties, all of whom I believe to be truthful and reliable.  This affidavit is also based upon police reports, official records, citizen witnesses' statements, consent searches, recorded statements, law enforcement surveillance, surveillance video, social media, court records, telephone records, and public records which I consider to be reliable as set forth herein.   The facts of this Affidavit are based upon information obtained from my investigation, as well as information I have received from other law enforcement officers.

3.      Based on the investigation to date, I submit that there is probable cause to believe that Shalonda S.M. DAVIS (XX/XX/1991) conspired to commit and committed four armed

robberies in Germantown, Wisconsin on December 23, 2020, in Butler, Wisconsin on December 23, 2020, in Milwaukee, Wisconsin on December 28, 2020, and in Greenfield, Wisconsin on December 28, 2020 in violation of Title 18, United States Code, Sections 1951(a) (Hobbs Act robbery), and 924(c) (use, brandishing, and discharge of a firearm during a crime of violence).

4.     This affidavit is submitted in support of an application for a search warrant for Shalonda DAVIS's Facebook account, and for evidence of DAVIS's and others' involvement in four armed robberies, in violation of Title 18, United States Code, Sections 1951(a), 924(c), on December 23, 2020 and December 28, 2020.

5.     More specifically, I seek authorization to search Facebook's information associated with Shalonda DAVIS, who is the user associated with the Facebook account with the following user name and ID number:

| FACEBOOK NAME | FACEBOOK IDENTIFICATION (UID) |
|---|---|
| Ske Davis | 100057034985097 |

6.     The information I seek is stored at premises owned, maintained, controlled, or operated by Facebook, a social networking company headquartered in Menlo Park, California, from at least approximately December 01, 2019 to the present.

7.     Because this affidavit is submitted for the limited purpose of obtaining a search warrant, I have not included each and every fact known to me concerning this investigation.  I have attempted to set forth only the facts I believe are pertinent to establishing the necessary foundation for the warrant.

II.     **PROBABLE CAUSE**

**December 23, 2020 – Germantown Speedway**

2

8.      On December 23, 2020 at approximately 10:52PM, two masked individuals entered the Speedway located at W178N9653 Riversbend Ln, Germantown, Wisconsin. Germantown Suspect #1 displayed a handgun and pointed it at the cashier, M.M. (XX/XX/1983), while Germantown Suspect #2 remained at the front door and acted as a lookout. Germantown Suspect #1 demanded the money in the register at which time M.M. provided her with it. After Germantown Suspect #1 was provided with the money, Germantown Suspect #1 and Germantown Suspect #2 fled northbound on foot toward a Holiday Inn Express. Germantown Suspect #1 obtained approximately $103 from the Speedway.

9.      Video surveillance corroborates M.M.'s account of the incident.

10.     Germantown Suspect #1 was described as a black female, approximately 5'05" tall, approximately 130 pounds, approximately 20-24 years of age, black and brown hair with a pink braid on the right front side of her head. She was wearing a black hooded sweatshirt, black gloves, black pants, white shoes, and a black face mask. Germantown Suspect #1 displayed a black handgun with a silver ejection port.

11.     Germantown Suspect #2 was described as a black individual, possibly male, approximately 6'01" tall, approximately 160 pounds, and approximately 20-25 years of age. Germantown Suspect #2 was wearing a black and gray hooded sweatshirt, black pants, black and white shoes, and a light-colored face mask. After reviewing surveillance video footage, it appears that Germantown Suspect #2's physical description is similar to Germantown Suspect #1.

### December 23, 2020 – Butler Fuel Stop

12.     On December 23, 2020 at approximately 11:39PM, two masked individuals entered the Fuel Stop located at 12419 W Hampton Ave, Butler, Wisconsin. Butler Suspect #1 approached the cashier, J.H. (XX/XX/1951), and pointed a handgun at him, stating, "Give me all the cash in the register." J.H. began to remove the money from the cash drawer at which time Butler Suspect

3

#1 told him to get the cash that was underneath the drawer as well, to which J.H. advised there was no cash under the drawer. J.H. handed the money to Butler Suspect #1, who placed it in the pocket of her hooded jacket. During the incident, Butler Suspect #2 remained at the front door and acted as a lookout. After receiving the money from J.H. Butler Suspect #1 and Butler Suspect #2 fled on foot southbound through the parking lot.

13.     Video surveillance corroborates J.H.'s account of the incident.

14.     Butler Suspect #1 was described as a black female, approximately 5'00" tall with a heavier build. She was wearing a black and gray hooded sweatshirt with the hood up, black pants, black and white shoes, and a black face mask. She displayed a black handgun with a silver ejection port. Butler Suspect #1 closely matches the physical and clothing description of Germantown Suspect #2 from the December 23, 2020 Germantown Speedway robbery.

15.     Butler Suspect #2 was described as a black female, approximately 5'00", with a heavy build. She was wearing a black beanie, black hooded sweatshirt, black pants, white shoes, and a black face mask. Butler Suspect #2 closely matches the physical and clothing description of Germantown Suspect #1 from the December 23, 2020 Germantown Speedway robbery.

### December 28, 2020 – Milwaukee Walgreens

16.     On December 28, 2020 at approximately 4:27PM, two masked individuals entered the Walgreens located at 2625 W National Avenue, Milwaukee, Wisconsin. Milwaukee Suspect #1 approached the cashier, A.M. (XX/XX/2000), placed a handgun on the counter, and demanded her to open up the cash register and give her money. A.M. told Milwaukee Suspect #1 that she would have to get a manager to open the register. Milwaukee Suspect #1 and A.M. walked to the rear of the business where A.M. flagged down store manager Y.O. (XX/XX/1989). Y.O then walked to the front of the store where she opened up two cash registers and placed the tills on the counter. Milwaukee Suspect #1 grabbed the cash out of the tills and placed it into her pockets.

4

While this was occurring, Milwaukee Suspect #2 stood by the front door and acted as a lookout. After Milwaukee Suspect #1 retrieved the cash, Milwaukee Suspect #1 and Milwaukee Suspect #2 fled on foot to a vehicle waiting in the parking lot.

17. A witness who observed the incident, D.E. (X/XX/1979) advised that a male individual was driving the vehicle that was waiting in the parking lot, but did not provide a description of the male. He described the vehicle as a small gray four-door sedan. Milwaukee Suspect #1 entered the back seat and Milwaukee Suspect #2 entered the front passenger seat of the vehicle. The vehicle then fled eastbound on National Avenue.

18. Surveillance video corroborates the accounts of the store employees and the witness.

19. Milwaukee Suspect #1 was described as a black female, approximately 5'05", medium build, approximately 30-35 years of age. She was wearing a black beanie, black jacket, black pants, black gloves, white shoes, and a black face mask. She was armed with a black handgun with a silver ejection port. Milwaukee Suspect #1 closely matches the physical and clothing description of Germantown Suspect #1 from the December 23, 2020 Germantown Speedway robbery.

20. Milwaukee Suspect #2 was described as a black female, approximately 5'06" to 5'07", stocky build, with a lighter brown skin tone. She was wearing black hooded sweatshirt with the hood up and a white t-shirt showing under it, a gray beanie, black pants, black and white shoes, and a gray face mask. Milwaukee Suspect #2 closely matches the physical and clothing description of Germantown Suspect #2 from the December 23, 2020 Germantown Speedway robbery.

21. Surveillance footage from the exterior of the Walgreens showed that the vehicle used in the getaway was a small silver sedan with heavy window tint.

**December 28, 2020 – Greenfield Speedway**

5

22.     On December 28, 2020 at approximately 7:49PM, two masked individuals entered the Speedway located at 3390 W Loomis Rd, Greenfield, Wisconsin. Greenfield Suspect #1 approached the cashier, M.S. (XX/XX/1996), displayed a black handgun that was in her jacket pocket, and said, "Hurry up and open the register." M.S. opened the register and Greenfield Suspect #1 walked around the counter and took the money out of the register. During this incident, Greenfield Suspect #2 was standing at the front door acting as a lookout. When Greenfield Suspect #1 removed the cash from the register, both she and Greenfield Suspect #2 fled on foot from the business.

23.     Greenfield Suspect #1 obtained $273.68 from the register.

24.     Surveillance footage from the Speedway corroborates the account o M.S.

25.     Greenfield Suspect #1 was described as a black female, approximately 5'05", with a stocky build. She was wearing a black jacket, black pants, black beanie, white shoes, and a black face mask. She was armed with a black handgun with a silver ejection port. Greenfield Suspect #1 closely matches the physical and clothing description of Germantown Suspect #1 from the December 23, 2020 Germantown Speedway robbery.

26.     Greenfield Suspect #2 was described as a black female, approximately 5'06", with a stocky build and a light skin tone. She was wearing a black jacket, black pants, gray beanie, gray face mask, and black and white shoes. Greenfield Suspect #2 closely matches the physical and clothing description of Germantown Suspect #2 from the December 23, 2020 Germantown Speedway robbery.

27.     During the incident a witness, R.S. (XX/XX/1991), was standing in the store and observed the robbery as it occurred. R.S. observed Greenfield Suspect #1 and Greenfield Suspect #2 exit the store and run behind the business via the alleyway. He then observed a silver Hyundai sedan with heavy tinted windows exit the alleyway with its headlights off. R.S. followed the

6

vehicle as it turned west onto W Loomis Road. He observed the vehicle turn west onto W Plainfield Avenue and he continued straight, knowing that W Plainfield Avenue was a dead-end street. R.S. then called the police and advised them of what he observed.

**<u>Arrest of Berdashia DAVIS</u>**

28.     At approximately 7:55PM, approximately 6 minutes after the Greenfield Speedway robbery took place, officers from the Greenfield Police Department observed a silver Hyundai Sonata with heavy window tint parked on W Plainfield Avenue at the end of the cul-de-sac. As officers parked their vehicles and began to give commands, they observed an individual run from the passenger side of the vehicle into the woods. Officers were unable to apprehend this individual.

29.     Officers approached the vehicle and observed an individual, later determined to be Berdashia DAVIS, sitting in the driver's seat. Officers took B. DAVIS into custody. When officers looked inside the vehicle, they observed a large number of US currency bills on the floorboard of the front passenger seat and a handgun in the front passenger side door pocket of the vehicle. Officers determined the amount of money on the floorboard of the vehicle to be $276. When officers removed the handgun from the vehicle, they observed that it was a Taurus G2C 9mm pistol, black with a silver ejection port; identical to the pistol used in the above four robberies.

30.     In the vehicle, officers also located a green winter jacket in the passenger seat. Inside a pocket of the winter jacket was a magazine belonging to the Taurus G2C that was loaded with eight rounds of ammunition. Officers also located one white athletic shoe, matching the shoes worn by Greenfield Suspect #1, and black gloves which also match the gloves worn by Greenfield Suspect #1.

31.     Officers then located two cell phones in the vehicle. One of the cell phones, a rose iPhone in a blue case, was voluntarily claimed by B. DAVIS. B. DAVIS advised that her phone number was 414-552-9158, which was corroborated when detectives conducted a court ordered

7

phone extraction. B. DAVIS told detectives that the second phone, a white iPhone in a green and black case, belonged to her mother, Y.P., who maintains phone number 414-554-7312. After a court ordered phone extraction, it was discovered that the number belonging to the cell phone was actually 414-614-3210. A search of law enforcement databases showed that the phone number 414-614-3210 is registered to Shalonda DAVIS.

32.    After B. DAVIS was taken into custody, officers requested a K-9 track of the area. Approximately 30-40 feet from the vehicle, officers located a black backpack abandoned in the woods. The backpack contained clothing consisting of a black sweatshirt, black pants, black Nike shoes with white soles, and a credit/debit card issued to B. DAVIS. The clothing located in the backpack is consistent with the clothing worn by Greenfield Suspect #2.

**Butler Anonymous Caller**

33.    On December 30, 2020, Butler Police Department Dispatch received a call from an anonymous caller. The anonymous caller advised that they knew the individuals who robbed the Fuel Stop and that they have photographs of both suspects and are friends with them on social media. The anonymous caller advised that one of the suspects was Shalonda DAVIS. The anonymous caller did not know the name of the second suspect but advised that her Facebook name was "Ddae Loving Gray Davis".

34.    TFO Strasser queried Facebook.com and located the name "Ddae Loving Bray Davis", which returned the account: facebook.com/ddae.davis. The Facebook user ID associated with this account is: 100005742911779. A review of the publicly viewable postings revealed multiple pictures matching the physical description of Butler Suspect #1 and Greenfield Suspect #2, as well as the known photographs of B. DAVIS, which were previously located in the various law enforcement databases.

35.     TFO Strasser then conducted a publicly viewable search of B. DAVIS's Facebook friends and located Shalonda DAVIS's Facebook page. The page returned to the account: facebook.com/ske.davis.9. The Facebook User ID associated with this account is: 100054748757691. A review of the publicly viewable postings associated with this account revealed multiple pictures matching the physical description of Butler Suspect #2 and Greenfield Suspect #1, as well as the known photographs of S. DAVIS, which were previously located in the various law enforcement databases.

### Prior Facebook Search Warrants

36.     On February 26, 2021, a Federal search warrant (21-M-347 (SCD)) was executed on the identified accounts of Berdashia DAVIS and Shalonda DAVIS. During a review of the information provided in the accounts, a second Facebook account belonging to Shalonda DAVIS was identified which returned to the account of "Ske Davis" at facebook.com/profile.php?id=100006675886487. The Facebook User ID associated with this account is: 100057034985097. A review of the publicly viewable postings associated with this account revealed multiple pictures matching the physical description of Butler Suspect #2 and Greenfield Suspect #1, as well as the known photographs of S. DAVIS, which were previously located in the various law enforcement databases.

### III.    FACEBOOK INFORMATION

37.     Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com. Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

38.     Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter. This information may include the

user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers (for password retrieval), physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers. Facebook also assigns a user identification number to each account.

39.     Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. Facebook assigns a group identification number to each group. A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other. Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

40.     Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

41.     Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition,

Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

42.     Facebook allows users to upload photos and videos, which may include any metadata such as location that the user transmitted when s/he uploaded the photo or video. It also provides users the ability to "tag" (i.e., label) other Facebook users in a photo or video. When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video. For Facebook's purposes, the photos and videos associated with a user's account will include all photos and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

43.     Facebook users can exchange private messages on Facebook with other users. These messages, which are similar to e-mail messages, are sent to the recipient's "Inbox" on Facebook, which also stores copies of messages sent by the recipient, as well as other information. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile. In addition, Facebook has a Chat feature that allows users to send and receive instant messages through Facebook. These chat communications are stored in the chat history for the account. Facebook also has a Video Calling feature, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

44.     If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

45. Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (*i.e.*, non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

46. Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

47. Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

48. Facebook Notes is a blogging feature available to Facebook users, and it enables users to write and post notes or personal web logs ("blogs"), or to import their blogs from other services, such as Xanga, LiveJournal, and Blogger.

49. The Facebook Gifts feature allows users to send virtual "gifts" to their friends that appear as icons on the recipient's profile page. Gifts cost money to purchase, and a personalized message can be attached to each gift. Facebook users can also send each other "pokes," which are free and simply result in a notification to the recipient that he or she has been "poked" by the sender.

50. Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

51. In addition to the applications described above, Facebook also provides its users with access to thousands of other applications ("apps") on the Facebook platform. When a

12

Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

52.     Some Facebook pages are affiliated with groups of users, rather than one individual user.  Membership in the group is monitored and regulated by the administrator or head of the group, who can invite new members and reject or accept requests by users to enter.  Facebook can identify all users who are currently registered to a particular group and can identify the administrator and/or creator of the group.  Facebook uses the term "Group Contact Info" to describe the contact information for the group's creator and/or administrator, as well as a PDF of the current status of the group profile page.

53.     Facebook uses the term "Neoprint" to describe an expanded view of a given user profile.  The "Neoprint" for a given user can include the following information from the user's profile:  profile contact information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications.

54.     Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP address.  These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action.  For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

13

55.     Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number).   In some cases, Facebook users may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users.   Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

56.     As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.   In my training and experience, a Facebook user's "Neoprint," IP log, stored electronic communications, and other data retained by Facebook, can indicate who has used or controlled the Facebook account.   This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.   For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time.   Further, Facebook account activity can show how and when the account was accessed or used.   For example, as described herein, Facebook logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date.   By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation.   Such information allows

14

investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation. Additionally, Facebook builds geo-location into some of its services. Geo-location allows, for example, users to "tag" their location in posts and Facebook "friends" to locate each other. This geographic and timeline information may tend to either inculpate or exculpate the Facebook account owner. Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation. For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

57. Therefore, the computers of Facebook are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

## IV. INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

58. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Facebook to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment.

15

## V.     CONCLUSION

59.     Based upon the facts contained within this affidavit, I believe that probable cause exists to search Shalonda DAVIS's Facebook Account for further evidence of hers and others' involvement in the armed Hobbs Act robberies described above.

**ATTACHMENT A**

*Property to Be Searched*

      To the extent that the information described in Attachment B is within the possession, custody, or control of Facebook, Facebook is required to disclose to the government the information for the following accounts and dates:

| FACEBOOK NAME | FACEBOOK IDENTIFICATION (UID) | DATES |
|---|---|---|
| Ske Davis | 100057034985097 | December 01, 2019 to the Present |

**ATTACHMENT B**

**Particular Things to be Seized**

**I.    Information to be disclosed by Facebook**

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook, including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for each user ID listed in Attachment A:

a.    All contact and personal identifying information, including**:** full name, user identification number, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

b.    All activity logs for the account and all other documents showing the user's posts and other Facebook activities;

c.    All photos uploaded by that user ID and all photos uploaded by any user that have that user tagged in them;

d.    All profile information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

18

e.     All other records of communications and messages made or received by the user, including all private messages, chat history, video calling history, and pending "Friend" requests;

f.     All "check ins" and other location information;

g.     All IP logs, including all records of the IP addresses that logged into the account;

h.     All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

i.     All information about the Facebook pages that the account is or was a "fan" of;

j.     All past and present lists of friends created by the account;

k.     All records of Facebook searches performed by the account;

l.     All information about the user's access and use of Facebook Marketplace;

m.     The types of service utilized by the user;

n.     The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

o.     All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

p.     All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

## II.   Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence, and instrumentalities of violations of 18 U.S.C. §§ 1951(a) (Hobbs Act robbery) and 18 U.S.C. 924(c)

(use of firearm during a crime of violence), since December 01, 2019, for the user ID's identified on Attachment A, information pertaining to the following matters:

(a) The relevant offense conduct, any preparatory steps taken in furtherance of the criminal scheme, and communications between Shalonda DAVIS and others related to the relevant offense conduct of robbery or Shalonda DAVIS's possession of a firearm.

(b) Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

(c) Evidence indicating the Facebook account owner's state of mind as it relates to the crimes under investigation;

(d) The identity of the person(s) who created or used the user ID; and

(e) The identity of the person(s) who communicated with the user ID about matters relating to relevant offense conduct of robbery.

20